**Efren CALERO, Plaintiff,**

**v.**

**UNISYS CORPORATION, a Delaware Corporation, James Turner, and Does 1 through 25, inclusive Defendants.**

**No. C03–0889 MHP.**

United States District Court,
N.D. California.

May 19, 2003.

---

Daniel Feder, The Law Offices of Daniel Feder, San Francisco, CA, for Efren Calero, Plaintiff.

Jamerson C. Allen, Jackson Lewis LLP, Nancy L. O'Neill, Jackson Lewis LLP, Nancy L. O'Neill, Jackson Lewis Schnitzler & Krupman, San Francisco, CA, for Unisys Corporation, a Delaware Corporation, James Turner, Defendants.

## *MEMORANDUM AND ORDER*

## MOTION TO REMAND

PATEL, Chief Judge.

Plaintiff Efren Calero filed his complaint in California state court against defendants Unisys Corporation and James Turner alleging several causes of action founded on employment discrimination based on physical disability. On February 28, 2003, defendants filed their notice of removal with this court contending that defendant Turner, a resident of the State of California, is not amenable to suit under the causes of action alleged. Accordingly, defendants argue that Turner was fraudu-

lently joined and his citizenship should be disregarded in determining jurisdiction under 28 U.S.C. section 1332 and 28 U.S.C. section 1441(b). Now before the court is plaintiff's Motion to Remand. Having considered the parties' arguments and submissions, and for the reasons set forth below, the court rules as follows.

*BACKGROUND*[1]

Unisys first hired plaintiff as a temporary employee in December 1999. According to plaintiff, both Client Services Coordinator and Manager praised him for his excellent performance in handling client service requests. Unisys made plaintiff a full-time employee in April 2000. In September 2000, plaintiff was allegedly named employee of the month in recognition of his exemplary performance. During that month, plaintiff had a recurrence of a seizure condition caused by a childhood injury and was required to take disability leave from his employment until March 2001. When plaintiff returned to work, he was assigned to work for a Unisys client, on-site, in San Francisco.

On December 31, 2001, plaintiff was involved in a car accident and suffered severe neck and back pain, which temporarily disabled him. Plaintiff states that he immediately notified the Unisys client he was assigned to and the Unisys Client Services Coordinator of his injuries and temporary disability. On January 2, 2002, the next business day, plaintiff left Turner, the Client Services Manager for Unisys, a voice mail message stating that he was injured with limited mobility. Plaintiff allegedly kept Turner notified of his status and stated that he would bring a doctor's note when he returned to work. On January 4, 2002, plaintiff took and passed a Compaq Computer Certification test he was scheduled to take. Plaintiff then called Turner to tell him that he passed

the test and that he had a medical appointment for his injuries that afternoon. Plaintiff called Turner on January 8, 2002 to tell him that his injuries were causing him pain and that he would therefore not be coming to work. Finally, on January 10, 2002, Turner sent plaintiff a letter terminating his employment effective that day, for alleged failure to notify Unisys management of his absence between January 7 and 10, 2002.

Plaintiff, a resident of the State of California, filed his original complaint in state court on December 23, 2002. The complaint names as defendants Unisys Corporation, a Delaware Corporation and James Turner, a resident of the State of California. It alleges four causes of action against Unisys alone for (1) employment discrimination based on physical disability; (2) failure to accommodate disability; (3) denial of medical leave; and (4) wrongful termination in violation of public policy. Plaintiff's fifth cause of action for intentional infliction of emotional distress is against all defendants. Plaintiff has also requested that this court allow him to amend his complaint to include a sixth cause of action against Turner for unlawful retaliation. Prop. FAC ¶¶ 43 to 46.

Defendants filed their notice of removal on February 28, 2003. The notice alleges that defendant Turner, who is a resident of the State of California, is not amenable to suit under the causes of action alleged. Accordingly, defendants argue that Turner is fraudulently joined and his citizenship should be disregarded for the purposes of determining jurisdiction under 28 U.S.C. § 1332 and 28 U.S.C. § 1441(b).

*LEGAL STANDARD*

■ As a general rule, an action is removable to a federal court only if it might have been brought there originally. 28

---

1. Unless otherwise noted, all the facts in this section from plaintiff's complaint.

U.S.C. § 1441(a). A district court has diversity jurisdiction over any civil action between citizens of different states so long as the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. If at any time before final judgment, the court determines that it is without subject matter jurisdiction, the action shall be remanded to state court. 28 U.S.C. § 1447(c).

■ The removal statute is strictly construed, and the court must reject federal jurisdiction if there is any doubt as to whether removal was proper. *Duncan v. Stuetzle,* 76 F.3d 1480, 1485 (9th Cir.1996). The defendants bear the burden of proving the propriety of removal. *Id.* If at any time before final judgment the court determines that it is without subject matter jurisdiction, the action shall be remanded to state court. 28 U.S.C. § 1447(c).

*DISCUSSION*

The parties do not dispute the amount in controversy. Accordingly, this motion turns on whether the diversity of citizenship requirement is met.

I. *Fraudulent Joinder*

■ Civil actions not involving a federal question are removable to a federal district court only if there is diversity of citizenship between the parties. 28 U.S.C. § 1332(a)(1). Section 1332 requires complete diversity of citizenship; each of the plaintiffs' citizenship must be diverse from each of the defendants.' *Caterpillar, Inc. v. Lewis,* 519 U.S. 61, 68, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996). However, one exception to the requirement of complete diversity is where a non-diverse defendant has been "fraudulently joined." Therefore, a defendant who has been fraudulently joined need not be considered in evaluating diversity of citizenship.

In the case at bar, Turner is a resident of the state of California, the same citizenship as plaintiff. Defendants argue that plaintiff's joinder of non-diverse defendant Turner was solely to defeat diversity and avoid removal to federal court. Defendants, therefore, assert that Turner should not be considered in evaluating diversity of citizenship of the parties because he was fraudulently joined.

■ The Ninth Circuit has held that "[i]f the plaintiff fails to state a cause of action against a resident defendant, and failure is obvious according to the settled rules of the state, joinder of the resident defendant is fraudulent and the defendant's presence in the lawsuit is ignored for purposes of determining diversity." *McCabe v. General Foods,* 811 F.2d 1336, 1339 (9th Cir.1987). Defendants must be able "to show that the individuals joined in the action cannot be liable on *any theory*." *Ritchey v. Upjohn Drug Co.,* 139 F.3d 1313, 1318 (9th Cir.1998) (emphasis added). Here, plaintiff asserts that Turner has not been fraudulently joined because defendants cannot meet this high standard.

■ The Ninth Circuit has not provided more specific direction on the exact fraudulent joinder standard. *Bellecci v. GTE Sprint Communications Corp.,* 2003 WL 151538, at *3 (N.D.Cal. Jan. 14, 2003) (Alsup, J.). Courts in the Northern District, however, have expressed a standard referencing the "possibility" of a claim. *Id.* Specifically, a district court assessing fraudulent joinder examines whether there is any possibility that plaintiff will be able to establish a cause of action against the allegedly non-diverse party. *Id.* (citing *Plute v. Roadway Packages Sys.,* 141 F.Supp.2d 1005, 1008 (N.D.Cal.2001) (Illston, J.)). A defendant will be deemed fraudulently joined only if, "after all disputed questions of fact and all ambiguities in the controlling state law are resolved in plaintiff's favor," plaintiff could not recover against the non-diverse party. *Id.* (quoting *Soo v. United Parcel Service, Inc.,* 73

F.Supp.2d 1126 (N.D.Cal.2001) (Breyer, J.)).

In deciding whether a cause of action is stated, the court looks "only to a plaintiff's pleadings to determine the removability." *Gould v. Mutual Life Ins. Co. of New York,* 790 F.2d 769, 773 (9th Cir.1986). Where fraudulent joinder is an issue, however, the court "will go somewhat further." *Ritchey,* 139 F.3d at 1318. Accordingly, a "defendant seeking removal to the federal court is entitled to present the facts showing joinder to be fraudulent." *McCabe,* 811 F.2d at 1339.

Plaintiff has also requested leave to amend his complaint and suggests that this court consider a sixth cause of action, in addition to the five stated in the complaint, in deciding the issue at hand. However, "[w]hether an action should be remanded must be resolved by reference to the complaint at the time the petition for removal was filed." *Kruso v. I.T.T.,* 872 F.2d 1416, 1426 n. 12 (9th Cir.1989) (citations omitted). The complaint as it existed at removal contains one cause of action against Turner—a claim against all defendants of intentional infliction of emotional distress.

Here, defendants argue that Turner cannot be subject to liability for the intentional infliction of emotional distress claim asserted in the complaint. Defendants set forth four arguments supporting their contention. The court will address each argument in turn.

### A. Cause of Action for Intentional Infliction of Emotional Distress

Defendants argue that plaintiff has failed to allege facts to demonstrate the "outrageous conduct" element of the intentional infliction of emotional distress tort. California permits recovery for conduct "so extreme and outrageous as to go beyond all possible bound of decency and to be regarded as atrocious and utterly intolerable in a civilized community." *Ru-lon–Miller v. Int'l Bus. Mach. Corp.,* 162 Cal.App.3d 241, 254, 208 Cal.Rptr. 524 (1984). Terminating an employee is not alone sufficient to satisfy the standard for extreme and outrageous conduct. *Pitman v. City of Oakland,* 197 Cal.App.3d 1037, 1047, 243 Cal.Rptr. 306 (1988). Where behavior goes beyond the act of termination, however, it is for the court to determine whether on the evidence severe emotional distress can be found. *Rulon–Miller,* 162 Cal.App.3d at 254, 208 Cal. Rptr. 524.

In *Rulon–Miller,* a supervisor gave an employee "a few days" to think about the choice between her job and her lover—the manager of a rival firm. *Id.* at 255, 208 Cal.Rptr. 524. The supervisor then acted without giving her a few days to think about it. *Id.* The court held that the supervisor's unilateral action removing any free choice on the part of the employee, contrary to the supervisor's earlier assurances, "clearly" supported a jury's finding of intentional infliction of emotional distress. 162 Cal.App.3d at 255, 208 Cal. Rptr. 524. In *Gibson v. Am. Airlines,* the court cited *Rulon–Miller* to support its holding that a plaintiff who was allegedly wrongfully discharged had a cause of action against the supervisor for intentional infliction of emotional distress. 1996 WL 329632 (N.D. Cal. June 6, 1996). In *Gibson,* an employee was discharged on the basis of two absences that she believed to be mere shift changes instead of "personal offs," which reflect poorly on one's employment record. *Id.* at *1. Plaintiff alleged that her second absence was due to the fact that her child had suffered an acute asthma attack and required emergency care. *Id.* The court held that a case for intentional infliction of emotional distress could be maintained because plaintiff "was denied medical leave in a deceptive manner that result[ed] in the plaintiff being

denied rights granted to other employees." *Id.* at *4.

■ In the case at bar, it is possible that plaintiff may be able to establish a cause of action against Turner. He alleges that Turner terminated him even though he regularly kept Turner informed as to his condition following the car accident and stated that he would bring in a doctor's note when he returned to work. *See* Compl. ¶¶ 10—14. Although plaintiff does not detail the egregiousness of the conduct of which he complains, he does allege that he notified Turner on January 8, a Tuesday, of his injuries and that he would not be returning to work. He then alleges that nonetheless Turner sent plaintiff a letter on January 10 terminating him for failure to notify UNISYS of his absence between January 7 and January 10. According to plaintiff, Turner had given him no indication that his leave to recover from his injuries would lead to his dismissal. Plaintiff alleges that Turner's acts were carried out in an "intentional, outrageous and malicious" manner, which was calculated to cause plaintiff "extreme emotional distress including but not limited to, humiliation, embarrassment, fear, anxiety and discomfort." Compl. ¶¶ 37 & 38. Plaintiff asserts in his reply that Turner deceived him into thinking that plaintiff had done all that was necessary to secure his right to remain employed while he took leave to recover from injuries received in an automobile accident. A state court could find that plaintiff was denied medical leave in a deceptive manner that results in the plaintiff being denied rights granted ordinarily to other employees. *See, e.g., Rulon–Miller,* 162 Cal.App.3d at 255, 208 Cal.Rptr.

524. Accordingly, a state court possibly could find that plaintiff has established a cause of action for intentional infliction of emotional distress.[2]

**B.** *Managers' Liability for Personnel Decisions*

■ It is now well settled that supervisors may not be held personally liable for discriminatory personnel decisions under California's Fair Employment and Housing Act ("FEHA"). *See* Gov't Code § 12940(a). Although individual managers cannot be held personally liable for discriminatory "personnel decisions," they may be held personally liable for unlawful "harassment" under *Reno v. Baird,* 18 Cal.4th 640, 646–47, 76 Cal.Rptr.2d 499, 957 P.2d 1333 (1998).

Even though plaintiff suggests that Turner "harassed" him in the pleadings, the only cause of action stated against Turner in the complaint is for intentional infliction of emotional distress. The court's decision in *Reno* does not concern intentional infliction of emotional distress, rather it concerns an action against a supervisor for employment discrimination based on FEHA. On the face of the original complaint, no cause of action against Turner under FEHA is stated. Accordingly, *Reno* is inapposite to the case at hand. There is no authority for the proposition that someone in Turner's position may not be liable in tort for the intentional infliction of emotional distress providing all of the elements of that tort are satisfied. Indeed, California case law is replete with cases where conduct of the employer or one of its agents or employees is so outside

**2.** Defendants cite two cases to support his contention that plaintiff has not alleged enough to sustain allegations for intentional infliction of emotional distress because he has not shown "outrageous conduct" on Turner's part. *See Janken v. GM Hughes Elecs.,* 46 Cal.App.4th 55, 80, 53 Cal.Rptr.2d 741; *King*

*v. AC&R Adver.,* 65 F.3d 764, 769 (9th Cir. 1995). Both of these cases, however do not apply the "no possibility" standard as they are not remand cases. In the case at bar, this court finds that plaintiff has established a showing that there is the "possibility" of a claim.

the bounds of conduct tolerated by a decent society that it may give rise to a claim for intentional infliction of emotional distress. *See, e.g., Kiseskey v. Carpenters' Trust for Southern California,* 144 Cal. App.3d 222, 229, 192 Cal.Rptr. 492 (1983)(citing a number of cases so holding).

#### C. *Managerial Immunity*

Defendant Turner apparently recognizes that a claim for intentional infliction of emotional distress may lie against an employer or its agents or employees since he next asserts a privilege of managerial immunity. If there was no basis for liability, there would be no need to rely upon a defense of immunity. The court now turns to that defense. Defendants cite several cases supporting the contention that the conduct of managerial employees is absolutely privileged under the doctrine of managerial immunity if the disputed conduct was within the course and scope of their employment. *See Imperial Ice Co. v. Rossier,* 18 Cal.2d 33, 112 P.2d 631 (1941); *Marin v. Jacuzzi,* 224 Cal.App.2d 549, 36 Cal.Rptr. 880 (1964); *DeHorney v. Bank of Am. Nat'l Trust and Sav. Assoc.,* 879 F.2d 459 (9th Cir.1989); *McCabe v. General Foods Corp.,* 811 F.2d 1336 (9th Cir. 1987). However, every one of these cases involves intentional interference with a contract induced by a third party.

▆▆▆▆ The manager's privilege arises from the notion that while a disinterested third party may be liable for interference with a contractual or economic relationship, a party having an interest in that relationship must be judged differently. *See, e.g., Kozlowsky v. Westminster Nat'l Bank,* 6 Cal.App.3d 593, 86 Cal.Rptr. 52 (1970). Where a managerial employee is motivated by a desire to benefit his principal, his conduct in inducing a breach of contract should be privileged. *Los Angeles Airways, Inc. v. Davis,* 687 F.2d 321, 328 (9th Cir.1982). The privilege is de-

signed to further certain societal interests by fostering uninhibited advice by agents to their principals. *Id.* As such, "the manager's privilege is merely an application of the general rule that the tort of intentional interference with economic relations applies only to disinterested parties." *Graw v. Los Angeles County Metro. Transp. Auth.,* 52 F.Supp.2d 1152, 1154 (C.D.Cal. 1999). The tort at issue in the case at bar, however, is intentional infliction of emotional distress—not intentional interference with a contractual or economic relationship.

In *Winzler v. Schinnerer & Co., Inc.,* 1992 U.S. Dist. Lexis 12790 (N.D.Cal. July 14, 1992), defendants asserted that if plaintiff was privileged for any tort related to the contract, he should also be privileged for intentional infliction of emotional distress. *Id.* at *9. However, the court found that defendants failed to provide a case that clearly stated a holding which established that the tort of intentional infliction of emotional distress stems from a contractual dispute between the employer and employee. *Id.* In *Losik v. Current, Inc.,* 1992 U.S. Dist. Lexis 20550, at *6 (N.D.Cal. Oct. 30, 1992), the court again held that the tort of intentional infliction of emotional distress was outside the scope of the managerial privilege.

It should be noted that this case is distinguishable from the Ninth Circuit holding in *McCabe, supra.* In *McCabe,* plaintiff's cause of action against his supervisors was found to be deficient because the supervisor's conduct was privileged. *Id.* However, managerial privilege was discussed in the context of the cause of action of wrongful discharge against the supervisor. *Id.* at 1339. The court's reasoning in dismissing plaintiff's claim for intentional infliction of emotional distress did not rest on managerial privilege, but on the foundation that plaintiff

had not shown the requisite "outrageousness" to qualify for that tort claim. *Id.* at 1340. Other district courts have also distinguished *McCabe* in evaluating whether a cause of action for intentional infliction of emotional distress exists. *See Losik,* 1992 U.S. Dist. 20550, at *5–6; *Winzler,* 1992 U.S. Dist. Lexis 12790, at *9–10.[3]

It is certainly questionable whether a managerial privilege could be asserted where the employer's or its agent's or employee's conduct is sufficiently egregious so as to constitute outrageous conduct. In addition to this question, it is far from clear under California law whether the managerial privilege is an affirmative defense or part of the plaintiff's cause of action. *Compare Aalgaard v. Merchants National Bank, Inc.,* 224 Cal.App.3d 674, 683, 274 Cal.Rptr. 81 (1990)("privilege, is an affirmative defense, not an element of plaintiff's cause of action. . . .") (*with* California Jury Instruction CA BAJI 12.70)("The essential elements of this claim are: 1. The defendant engaged in outrageous, [unprivileged] conduct:. . . ."). It is also uncertain whether the privilege, if any, is absolute or conditional. What is clear from a review of cases such as *Aalgard* is that the question of the privilege as well as the claim itself is bound up in the conduct of the defendant and is thoroughly fact intensive.

Since defendants have the burden of establishing that they are entitled to removal and since they have failed to convince this court that a state court will find that the manager's privilege applies in this action, and since all questions of fact, of which there are many, must be resolved in plaintiff's favor, it is clear that this action must be remanded.

### D. Workers Compensation Act

Finally, defendants argue that plaintiff's claim for intentional infliction of emotional distress is barred by the exclusivity provisions of the Workers' Compensation Act. Cal. Lab.Code § 3602. This contention suffers from some of the same problems as the managerial privilege defense for many of the same reasons.

Generally, claims for emotional distress caused by the employer's conduct causing distress such as "discharge, demotion, discipline or criticism" are preempted by the Workers' Compensation Act, even when the employer's acts causing the distress are intentional or outrageous. *Gantt v. Sentry Ins.,* 1 Cal.4th 1083, 1099, 4 Cal.Rptr.2d 874, 824 P.2d 680 (1992), *rev'd on other grounds, Green v. Ralee Eng'g Co.,* 19 Cal.4th 66, 80, n. 6, 78 Cal.Rptr.2d 16, 960 P.2d 1046 (1998). Such distress, whether intentional or negligent conduct on the part of the employer, is considered "part of the normal risk of employment" and hence subject to the exclusive remedies of the workers' compensation laws. *Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund,* 24 Cal.4th 800, 814–15, 102 Cal.Rptr.2d 562, 14 P.3d 234 (2001).

The phrase "normal part of the employment relationship," however, does not encompass all conduct that occurs on the job. *Cole v. Fair Oaks Fire Protection Dist.,* 43

---

**3.** Plaintiff also cites *Sheppard v. Freeman,* where the court held that "except where a statutory exception applies, an employer or former employee cannot sue other employees based on their conduct relating to personnel actions." 67 Cal.App.4th 339, 344, 79 Cal. Rptr.2d 13 (1998) (emphasis added). Plaintiff states that the statutory exception that the *Sheppard* court has in mind was that indicat-

ed in *Foley v. Interactive Data Corp.,* 47 Cal.3d 654, 669–70, 254 Cal.Rptr. 211, 765 P.2d 373 (1988), where employer's conduct violates public policy. He then asserts that because Turner was motivated by his desire to deny plaintiff's rights under FEHA—in violation of public policy—plaintiff can sue Turner. However plaintiff fails to cite any cases to support this line of reasoning.

Cal.3d 148, 160, 233 Cal.Rptr. 308, 729 P.2d 743 (1987). Tort recovery pursued via a separate civil action is permitted if the conduct of the employer has a "questionable" relationship to the employment or where the employer steps out of his proper role. *Id.* at 161, 233 Cal.Rptr. 308, 729 P.2d 743. *See also Shoemaker v. Myers,* 52 Cal.3d 1, 16, 276 Cal.Rptr. 303, 801 P.2d 1054 (1990) (holding that the exclusive remedy provisions are not applicable to risks not "reasonably encompassed within the compensation bargain" under the Workers' Compensation Act).

In *Lenk v. Total–Western, Inc.,* 89 Cal. App.4th 959, 972, 108 Cal.Rptr.2d 34 (2001), the court held that an employer's false statements made to induce a person to become an employee was not part of the employment relationship or a risk reasonably encompassed within the compensation bargain. Accordingly, the court held that an emotional distress claim caused by employees reliance on employer's fraudulent misrepresentations was not preempted. *Id.* A number of other cases have adopted this line of reasoning in holding that claims for emotional distress were not preempted by California workers' compensation laws. *See Livitsanos v. Super. Ct.,* 2 Cal.4th 744, 756, 7 Cal.Rptr.2d 808, 828 P.2d 1195 (1993) (holding that emotional distress resulting from employer's defamation and harassment was not preempted); *Kovatch v. California Cas. Management Co., Inc.,* 65 Cal.App.4th 1256, 1277, 77 Cal.Rptr.2d 217 (1998) (holding that an emotional distress claim arising from unlawful harassment was not preempted), *rev'd on other grounds, Aguilar v. Atlantic Richfield Co.,* 25 Cal.4th 826, 107 Cal.Rptr.2d 841, 24 P.3d 493 (2001); *Fretland v. County of Humboldt,* 69 Cal.App.4th 1478, 1492, 82 Cal.Rptr.2d 359 (1999) (holding that an emotional distress claim arising from unlawful discrimination was not preempted).

There is no bright line test in determining what behavior is part of the employment relationship or reasonably encompassed within the compensation bargain. Nevertheless, district courts must resolve ambiguities in the controlling state law in favor of the non-removing party when evaluating fraudulent joinder. *Dodson v. Spiliada Maritime Corp.,* 951 F.2d 40, 41 (5th Cir.1992), *see also Bellecci,* 2003 WL 151538, at *3 (holding that all ambiguities in controlling state law be resolved in plaintiff's favor) (quoting *Soo,* 73 F.Supp.2d 1126, 1128). In the case at bar, plaintiff's intentional infliction of emotional distress claim is based on the fact that Turner deceived him into thinking that he had done all that was necessary to secure his right to remain employed while he took leave to recover from injuries received in an automobile accident. Defendants have failed to show that plaintiff's claim is impossible as a matter of California law and have not submitted any facts that the claim is frivolous. Furthermore, the preemption contention is heavily fact intensive for the same reasons as the managerial privilege defense. Many of the same questions arise, namely, the nature of defendants' conduct and whether it is so far out of the normal risks of the employment relationship as to be beyond the reach of Workers' Compensation.

For the reasons discussed above, this court finds that plaintiff's claim of intentional infliction of emotional distress raises a possible cause of action.

## II. *Motion to Amend Complaint*

Subsequent to his Motion to Remand, plaintiff filed a Motion for Leave to File a First Amended Complaint. Plaintiff requests that this court allow him to amend his complaint to include a sixth cause of action against Turner for unlawful retaliation. Prop. FAC ¶¶ 43 to 46. This court

need not address this matter as it should be taken up with state court.

### III. *Costs and Expenses*

 As a final matter, plaintiff requests that an award of costs, including attorney's fees, should this court grant its motion to remand. The removal statute provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney's fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). A district court has broad discretion under this provision. *See Moore v Permanente Med. Group. Inc.*, 981 F.2d 443, 447 (9th Cir. 1992) (holding that the award or denial of costs and fees pursuant to this section is reviewed for abuse of discretion). This court finds that an award of costs and fees is not warranted in this case, given that the removal was based on reasonable and supported interpretation of unsettled California law. Plaintiff's request for costs and fees is denied.

### *CONCLUSION*

For the foregoing reasons, the court hereby GRANTS plaintiff's Motion to Remand. It is ORDERED that this case is remanded under 28 U.S.C. § 1447(c) to the Superior Court of the City and County of San Francisco. The Clerk of this Court shall transmit forthwith a certified copy of this order to the Clerk of the Superior Court and close this case displaying all pending motions as resolved.

IT IS SO ORDERED